IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

City of Walterboro,              )
                                     )
           Plaintiff,        )
                                     )
v.                               )     Civil Action No. 2:19-493-BHH
                                   )
AECOM Technical Services, Inc. d/b/a )
AECOM and URS Corporation f/k/a )         __ORDER__
B.P. Barber & Associates, Inc. d/b/a )
AECOM,                        )
                                   )
          Defendant.     )
_____ )

This matter is before the Court upon the motion for summary judgment filed by Defendant AECOM Technical Services, Inc. d/b/a AECOM and URS Corporation f/k/a B.P. Barber & Associates, Inc. d/b/a AECOM ("Defendant" or "AECOM"). In its motion, AECOM seeks summary judgment on Plaintiff City of Walterboro's ("Plaintiff" or "the City") claims for (1) breach of contract, (2) breach of implied warranty of sufficiency of plans and specifications, (3) promissory and equitable estoppel, (4) negligent misrepresentation, and (5) professional negligence/malpractice. Specifically, Defendant asserts that Plaintiff cannot establish its damages with sufficient certainty and that all of Plaintiff's claims are barred by the three-year statute of limitations. In addition, with respect to Plaintiff's breach of contract claim, Defendant asserts that Plaintiff has not presented any evidence of a breach of the operative agreement, and with respect to Plaintiff's breach of implied warranty claim, Defendant asserts that Plaintiff has not presented any evidence that the plans and specifications were insufficient. Finally, with respect to Plaintiff's claim for promissory and equitable estoppel, Defendant asserts that Plaintiff has not presented any

evidence of: a false representation or concealment by Defendant, a promise unambiguous in its terms, or reasonable reliance.

Plaintiff filed a response in opposition to Defendant's motion, asserting that Defendant's motion misconstrues the facts and incorrectly applies the law to the facts. In support of its arguments, Plaintiff attaches the declarations of Jeffrey P. Molinari ("Molinari"), the City Manager for the City of Walterboro, and Wayne Crosby ("Crosby"), the Director of Public Works for the City of Walterboro.

In its reply brief, Defendant argues that the declarations of Molinari and Crosby are improper and cannot create a material issue of fact because the declarations contradict these individuals' prior, sworn deposition testimony. Defendant reiterates its position that Plaintiff's damages are too speculative and asserts that the declarations of Molinari and Crosby do not create a genuine issue of material fact as to damages. With respect to Plaintiff's alternative argument that it may seek a refund of all of the fees paid to Defendant, Defendant contends that the case law upon which Plaintiff relies is inapposite, and that, even if Plaintiff could maintain a claim for the refund of fees, which Defendant disputes, Plaintiff would be limited to seeking the cost incurred pursuant to Task Order 33. In addition to the foregoing, Defendant contends that the declarations of Molinari and Crosby do not create a genuine issue of material fact as to the statute of limitations because the declarations contradict these individuals' prior, clear testimony on this issue. Finally, Defendant asserts that the declarations of Molinari and Crosby do not create a genuine issue of material fact regarding Plaintiff's breach of contract or breach of warranty claims because both Molinari and Crosby testified that Task Order 33 was a full description of the services they requested from Defendant at the time.

2

After consideration, and for the following reasons, the Court grants in part and denies in part Defendant's motion for summary judgment.

## BACKGROUND

Plaintiff initially filed this action in January of 2019 in the Colleton County Court of Common Pleas.  Defendant removed the action to this Court in February of 2019, and Plaintiff filed an amended complaint on May 8, 2019.  In its amended complaint, Plaintiff alleges that Defendant entered into a contract with the City on August 21, 2008, called a General Agreement for Professional Engineering Services.  (ECF No. 17 ¶ 5; ECF No. 35-1.)  According to this agreement, Defendant would serve as consulting engineers for the City in the preparation of various engineering services ("Projects") that would be described and outlined in "Task Orders" separately agreed to by both parties.  (*Id.*)

On February 11, 2015, the parties agreed to an individual Task Order ("Task Order 33"), which described the Project as "[a]ssistance with DHEC Form 0874 – Sludge Annual Agronomic Loading Rate Worksheet and Land Application Program review" and "[f]easibility study and Preliminary Engineering Report (PER) for biosolids handling."  (ECF No. 35-4.) In connection with Task Order 33, Defendant provided the City with a "Technical Memorandum" in May of 2015, evaluating the feasibility of biosolids handling improvement and identifying necessary upgrades.  (ECF No. 35-6.)  This Technical Memorandum includes "preliminary opinions of probable construction costs for the proposed sludge holding improvement and sludge dewatering facility."  (*Id.* at 4.)  Also in connection with Task Order 33, Defendant produced a "Preliminary Engineering Report" in May of 2015, with the purpose "to upgrade the [Walterboro Wastewater Treatment Plant] to provide additional biosolids storage for optional flexibility and sludge dewatering improvements for

3

landfill disposal of biosolids." (ECF No. 35-7 at 6.) Don Lee, Ph.D., ("Dr. Lee") authored the Technical Memorandum and Preliminary Engineering Report on behalf of Defendant. In both the Technical Memorandum and the Preliminary Engineering Report, all of the improvement options include a cake conveyance system despite the City's desire for a two-story screw press structure. (ECF No. 35-6 at 6-7; ECF No. 35-7 at 14; ECF No. 35-5 at 13; ECF No. 35-2 at 14; and ECF No. 35-3 at 16-17.) In addition, Dr. Lee calculated the volume of sludge in an existing equalization basin, estimating the probable cost for sludge disposal as $200,000.00. (ECF No. 35-6 at 14.) Ultimately, Dr. Lee estimated the total construction costs for Plaintiff as $3,076,000.00 with a ten percent contingency of $308,000.00. (*Id.* "Option A-1")

Following receipt of the Technical Memorandum and Preliminary Engineering Report, the City submitted an application for federal grant funding through the United States' Economic Development Administration ("EDA") on June 12, 2015. (ECF No. 17 ¶ 15; ECF No. 35-8 at 2.) The Lowcountry Council of Governments prepared the grant application on behalf of the City, and the City's request for $3,400,000.00 was based on the cost estimate provided by Defendant. (ECF No. 35-3 at 19; ECF No. 35-2 at 17.)

On June 16, 2015, the parties agreed to another individual Task Order ("Task Order 36), which described the Project as "Walterboro Wastewater Treatment Plant (WWTP) Biosolids Upgrade as proposed in Technical Memorandum—Feasibility Study for Biosolids Handling Dated May 2015." (ECF No. 35-9.) This Task Order required Defendant to prepare construction plans and specifications and submit an opinion of the probable cost for the Project. (*Id.* at 2-3.) Task Order 36 provides that Defendant "cannot and does not guarantee that proposals, bids, or the Project construction cost will not vary from

[Defendant's] opinion of the probable cost of the Project." (*Id.* at 3.)

The City received tentative approval of the EDA grant on July 31, 2015, and final approval on January 4, 2016. (ECF No. 35-12; ECF No. 39-3.) The EDA agreed to provide 60 percent of the submitted project cost estimate of $3,400,000.00 to the City, with the City obligated to make up the remainder. (ECF No. 35-2 at 18.) The City also received a grant from the South Carolina Rural Infrastructure Authority ("RIA") and a low-interest loan from the South Carolina State Revolving Fund. (*Id.*) Following the completion of the design phase, Defendant provided the City with an updated, pre-bid estimate of $3,942,400.00. (ECF No. 35-10.) The City moved forward with the bidding process for the Project and selected a contractor. During construction, however, more sludge had to be removed than the 200 dry tons previously estimated by Dr. Lee, resulting in a change order indicating an increase of 457 dry tons and a $400,000.00 increase in the cost for sludge removal. (ECF No. 35-11.)

According to Plaintiff's amended complaint, "Defendants' plans, specifications, estimates were crucial to the success of the project," and Plaintiff "relied on Defendants' expertise in preparing bid documents and in applying for funds to complete the upgrade." (ECF No. 17 ¶ 9.) Plaintiff alleges that Defendant "failed to provide accurate plans or accurate estimates" and "failed to properly evaluate and estimate the cost of the removal of existing sludge waste from an existing basin prior to modification." (*Id.* ¶¶ 12-13.) Plaintiff further contends that Defendant's failure to create accurate plans and estimates resulted in Plaintiff receiving a federal grant based on inadequate calculations and Plaintiff incurring significant and unforeseen cost overruns in excess of $1,000,000.00, which Plaintiff asserts could have been avoided if Defendant properly performed its work. (*Id.*

¶¶ 14-15.)

## STANDARD OF REVIEW

A court shall grant summary judgment if a party shows that there is no genuine dispute as to any material fact and the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All evidence should be viewed in the light most favorable to the non-moving party. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

As an initial matter, the Court notes that Plaintiff has agreed not to pursue its cause of action for promissory and equitable estoppel. (ECF No. 38 at 17.) Thus, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's third cause of action.

With regard to Defendant's argument that Plaintiff's damages are too speculative for Plaintiff to proceed with as all of its claims, the Court is not convinced. Defendant argues that Plaintiff's claimed damages are too uncertain, contingent, or speculative because Plaintiff has not shown that it would have received additional federal grant funds if it had applied for them. After review, however, the Court finds that Defendant's argument oversimplifies and misconstrues the nature of Plaintiff's claims and essentially asks the

6

Court to resolve factual questions. In addition, the Court agrees with Plaintiff that Defendant's argument overlooks the fact that, at least with respect to Plaintiff's claim for professional negligence, a recognized method of damages is the cost of the fees paid to the professional. In all, the Court finds that it would not be appropriate to grant summary judgment at this time based on the question of damages. Accordingly, Defendant's motion for summary judgment is denied in this regard.

Next, however, the Court *is convinced* by Defendant's argument that the statute of limitations bars Plaintiff's claims related to Defendant's inclusion of a one-story conveyor system (as opposed to two-story screw press) waste transfer facility in the Technical Memorandum and Preliminary Engineering Report. Specifically, the Court finds that the declaration of Crosby, submitted in connection with Plaintiff's response to Defendant's motion for summary judgment, cannot create a genuine issue of material fact as to when Plaintiff knew (or should have known by the exercise of reasonable diligence) that it had a claim with respect to Defendant's inclusion of a one-story waste transfer facility because Crosby's declaration contradicts his prior, sworn testimony, which made clear that Crosby knew in 2015 that Defendant's Technical Memorandum and Preliminary Engineering Report included a one-story conveyor system. *See In re Family Dollar FSLA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011) (explaining that a party "cannot create a dispute about a fact that is contained in deposition testimony by referring to a subsequent affidavit of the deponent contradicting the deponent's prior testimony"). Accordingly, the Court disregards Crosby's declaration as inconsistent with his prior deposition testimony.

Specifically, Crosby provided the following testimony when asked at his deposition about this issue:

7

Q.      . . . Between February 11, 2015, when task order 33 was signed and May of 2015 when the PER and the tech memo were issued, were there any other issues that you brought to the attention of AECOM regarding this project?

A.      I believe it was along that same time frame that we mentioned that there was a conveyor belt mentioned in one of the technical memorandums, a conveyance system on the sludge screw press building. And that did not correspond to what we had looked at in the Town of St. George nor what we expected.

(ECF No. 35-3 at 16.) Crosby also testified as follows:

Q.      And did you receive a copy of [the preliminary engineering report] in May of 2015?

A.      Yes.

Q.      Did you have an opportunity to review this document in May of 2015?
A.      Yes.

Q.      Did you have any questions or concerns that you expressed to AECOM or its representative following your review of [the preliminary engineering report] in May of 2015?]

A.      If that document – and I don't recall – but if that document was the first time that I saw the conveyor system, then, yes, I'm sure that was the point that it was expressed to them.

Q.      . . . I believe that this is in the technical memorandum, so let's just make sure that I'm not lying.

A.      I believe you're right.

(*Id.* at 17.) Crosby later testified:

Q.      So when you saw an issue with the May 2015 tech memo that we're looking at here, Exhibit 5, related to the two-story dewatering facility, did you bring that issue to the attention of anybody at AECOM at that time?

A.      My only point of contact was Eric King, and I brought it to his attention when I first saw it. I don't recall if it was in this memo or not.

Q.      Do you recall a time frame at all when you first saw the issue you had

8

> with the design of the one-story conveyor system as opposed to the
> two-story dewatering building?
>
> A.    It was sometime in 2015.

(*Id.* at 18.) Lastly, when again asked about his discovery of the lack of a two-story facility,

Crosby testified:

> Q.    And not to belabor this but I do want to ask one more time just to be
> sure I understand your answer. It's your testimony that you do not
> recall the specific time when you first noticed the lack of a two-story
> dewatering facility but that it would have been sometime during 2015;
> is that correct?
>
> A.    Yes.

(*Id.* at 19.)

In his declaration, Crosby asserts that, since his deposition, he has reviewed the

records and refreshed his recollection of when he became aware of the issue. (ECF No.

40 at 6.) He further states: "I can now say with absolute certainty and confidence that the

earliest date I became [a]ware of the elevated structure mistake and resulting cost impact

to the City . . . occurred on or about April 11, 2016; it did not happen in calendar year

2015." (*Id.*) In support of this new statement, Crosby relies on an email chain indicating

that Crosby was not happy with a cost increase that was due in part to the original estimate

being based on a single story building using a conveyor. (ECF No 40-4 at 2.) Ultimately,

however, the Court is not convinced that this email in any way proves when Crosby learned

that Defendant's Technical Memorandum and Preliminary Engineering Report included a

one-story conveyor system rather than the City's desired two-story screw press system.

Rather, as Defendant asserts in its reply, Crosby clearly testified on numerous occasions

during his deposition that he discovered this issue in 2015, and his testimony is, in fact,

9

consistent with the language of the Technical Memorandum and Preliminary Engineering Report, which were both provided to Plaintiff in 2015. Therefore, the Court agrees with Defendant that Crosby's new, contradictory claim does not create a genuine issue of material fact on this point,[1] and the Court finds that Defendant is entitled to summary judgment on Plaintiff's claims related to Defendant's inclusion of a one-story conveyor system rather than a two-story screw press system, because Plaintiff was aware of the issue in 2015 and did not file suit until more than three years later in 2019.

In contrast, the Court is *not convinced* that the three-year statute of limitations bars Plaintiff's claims based on Dr. Lee's improper sludge calculations. First, the Court finds a question of fact as to exactly when Crosby raised questions about Dr. Lee's sludge calculations. Second, however, even assuming that Crosby did raise questions about Dr. Lee's sludge calculations in 2015, as opposed to 2016 or 2017 as he now claims in his declaration, it is not clear that any questions Crosby may have raised would have triggered the statute of limitations. This is because Dr. Lee's estimated cost of $200,000.00 to remove the dry sludge did not include any specific estimated quantity of dry sludge. Moreover, although a bid form dated December 14, 2016, indicates an estimated quantity of 200 dry tons of sludge (ECF No. 39-6), Crosby specifically testified that construction began in 2017, and that it was not until the first week of construction that it became clear that the sludge calculations were not accurate. (ECF No. 35-3 at 21.) Also, Molinari

---

[1] Nor does Molinari's declaration create a genuine issue of material fact on this point. Although Molinari asserts that the City's first notice of deficiencies in Defendant's engineering work occurred on April 11, 2016, when the Director of Public Works was notified of a necessary budget increase, Molinari also admits that "Dr. Lee's initial opinion of construction cost did not include a raised platform screw press building, . . ." (ECF No. 39 at 4.) Moreover, because Crosby clearly testified that he knew of this alleged deficiency in Dr. Lee's work in 2015, Molinari's statement that "every indication we had ever received from the engineers depicted [a raised platform screw press building]," is incorrect. (*Id.*)

testified that it was not until the summer of 2017 that Crosby informed him of the issue with the additional sludge removal. (ECF No. 35-2 at 16.) As such, the Court finds that the statute of limitations does not bar Plaintiff's claims based on Defendant's alleged improper sludge removal calculations.

In its motion for summary judgment, Defendant also raises arguments specific to certain of Plaintiff's individual causes of action. First, Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim because Plaintiff has not provided any evidence of a breach of the operative agreement. After consideration, the Court agrees with Defendant.

In its breach of contract claim, Plaintiff relies on the Task Order entered into on June 16, 2015 (Task Order 36), and asserts that Defendant breached the contract "by materially altering the design of the facility to include a conveyor belt transfer station as opposed to an elevated platform transfer station, which was required by Plaintiff, . . . ." (ECF No. 17 ¶ 18.) Plaintiff also asserts that Defendant breached the contract "by failing to accurately estimate the required services needed to remove existing waste from a basin on the project site." (*Id.*) Importantly, however, nowhere does Plaintiff point to any specific language of this Task Order that Defendant allegedly breached. In addition, to the extent Plaintiff asserts that Defendant's alleged breach resulted in a loss of grant funds, the evidence indicates that Plaintiff applied for federal grant funding *before* the parties agreed to Task Order 36.

In response to Defendant's motion, Plaintiff argues that Defendant's argument ignores the parties' decade-long course of dealing and the master contract, and Plaintiff asserts that its breach of contract claim "encompasses both the express and implied

11

obligations arising from a professional services contract and relationship, including the obligation of good faith and fair dealings, implied workmanship, and the duty to perform all work [ ] with a reasonable degree of care . . . ." (ECF No. 38 at 15.)  However, as Defendant argues in reply, both Molinari and Crosby testified that Task Order 33 included a full description of the services owed by Defendant at the time when Plaintiff filed its application for federal funding (as the parties did not enter Task Order 36 until after Plaintiff applied for federal grant funding).  Because Plaintiff has not pointed to any evidence of any ambiguity in any of the parties' agreements or any course of dealing that required additional duties from Defendant, the Court agrees with Defendant (for all of the aforementioned reasons) that it is entitled to summary judgment on Plaintiff's breach of contract claim.

Defendant also argues that it is entitled to summary judgment on Plaintiff's claim for breach of implied warranty of sufficiency of plans and specifications because Plaintiff has not produced any evidence that the plans and specifications were insufficient for their purpose, i.e., the construction of the wastewater treatment plant improvements.  Defendant asserts: "because the uncontested evidence demonstrates that the plans and specifications were sufficient for the proper construction of the desired upgrade at the Plaint, this cause of action must be dismissed." (ECF No. 35 at 17.)

In response, Plaintiff contends that Defendant's argument improperly narrows this cause of action.  Plaintiff argues that "the estimates provided and opinions of probable construction cost fall within this warranty and the law supports that claim." (ECF No. 38 at 16.)

After review, the Court agrees with Plaintiff that this cause of action is broader than Defendant's argument indicates.  In other words, while Defendant is correct that the record

does not contain evidence of any issues with the wastewater treatment plant *as it was ultimately constructed*, the record does contain evidence indicating that certain of Defendant's estimates were insufficient for the intended purpose. Accordingly, the Court finds a genuine issue of material fact and denies Defendant's motion for summary judgment as to Plaintiff's claim for breach of the implied warranty of sufficiency of plans and specifications, at least with respect to Defendant's alleged improper sludge calculations.

Defendant's motion for summary judgment does not include arguments specific to Plaintiff's claims for negligent misrepresentation or professional negligence/malpractice, and the Court finds no reason to grant Defendant's motion as to these claims with respect to Defendant's alleged improper sludge removal calculations.

## CONCLUSION

Based on the foregoing, the Court grants in part and denies in part Defendant's motion for summary judgment (ECF No. 34). Specifically, the Court finds that the three-year statute of limitations bars Plaintiff's claims based on Defendant's inclusion of a one-story conveyor system rather than a two-story screw press system in the Technical Memorandum and Preliminary Engineering Report. In addition, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's claims for breach of contract and promissory and equitable estoppel (first and third causes of action). However, the Court denies Defendant's motion for summary judgment with respect to Plaintiff's claims for breach of implied warranty of sufficiency of plans and specifications, negligent misrepresentation, and professional negligence/malpractice (insofar as they are based on Defendant's alleged improper sludge calculations).

**IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

March 22, 2021
Charleston, South Carolina